1

2

3

4              IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                   FOR THE COUNTY OF MULTNOMAH

6

7    I. J.,                                    Case No. 21CV27941

8              Plaintiff,                       COMPLAINT – Breach of Contract;
                                                Civil Rights Violations
9         v.
                                                Prayer Amount: $20,000,000.00
10   OREGON HEALTH & SCIENCES                   ORS Ch. 21.160(1)(e) $1,178
     UNIVERSITY, an Oregon public
11   corporation; SIMA DESAI, an individual;
     and CHRISTOPHER SWIDE, an                  Claim Not Subject to Mandatory
12   individual.                                Arbitration

13            Defendants.                       **DEMAND FOR TRIAL BY JURY**

14

15        Plaintiff I.J., M.D. alleges that at all relevant and material times:

16                                    1.

17        Plaintiff is a physician domiciled in Portland, Multnomah County, Oregon.

18                                    2.

19        Defendant Oregon Health & Sciences University ("OHSU") is an Oregon public

20   corporation, which operates as a medical university located in Portland.

21                                    3.

22        As a public entity and teaching facility, Defendant OHSU was receiving federal

23   funding, as contemplated by Title IX, 20 U.S.C. § 1681, *et seq.*

24                                    4.

25         During the time periods at issue, OSHU employed the individuals involved in this

26   case as detailed below. At all material times, Defendant OHSU acted through its

Page 1 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

**Exhibit 2 - Page 1 of 40**

1    employees and agents, including but not limited to Defendants Desai and Swide.

2                                              5.

3         Defendant Dr. Sima Desai was and is the Director of Defendant OHSU's Internal

4    Medicine Residency Program ("Program Director"). Defendant Desai was and is an agent

5    of Defendant OHSU, which itself is a public entity. Defendant Desai aided and abetted in

6    the deprivation of Plaintiff's constitutional rights alleged herein. Additionally, Defendant

7    Desai aided and abetted in the breach of the settlement agreement as alleged herein.

8    Lastly, Defendant Desai conspired with one or more Defendants and/or Defendants'

9    agents to deprive Plaintiff of her constitutional rights alleged herein.

10                                             6.

11        Defendant Dr. Christopher Swide was and is the Associate Dean of Defendant

12   OHSU's Graduate Medical Education ("GME") department. Defendant Swide was and is

13   an agent of Defendant OHSU, which itself is a public entity. Defendant Swide aided and

14   abetted in the deprivation of Plaintiff's constitutional rights alleged herein. Additionally,

15   and in concert with Defendant Desai, Defendant Swide aided and abetted in the breach of

16   the settlement agreement as alleged herein. Lastly, Defendant Swide conspired with one

17   or more Defendants and/or Defendants' agents to deprive Plaintiff of her constitutional

18   rights alleged herein.

19                                             7.

20        Plaintiff is a first-generation Russian American who immigrated to the United

21   States on her own in 2001. Without any financial support, Plaintiff graduated with honors

22   from college and later attended medical school, where she also graduated with honors and

23   with aspirations to become an oncologist after the completion of her residency.

24                                             8.

25        Plaintiff was employed by and a student of Defendant OHSU as an internal

26   medicine resident in OHSU's GME department beginning in July of 2014, after matching

Page 2 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 2 of 40

1    with OHSU as her top choice program for her residency match. In addition to having a

2    positive interview at OHSU, Plaintiff had interviewed for residency programs at

3    Dartmouth, Brown, and Case Western, among others. Plaintiff chose OHSU's Internal

4    Medicine Residency in part because of its stated commitment to diversity and inclusion

5    as fundamental goals of its program.

6                                                    9.

7        The Accreditation Council for Graduate Medical Education ("ACGME"), which

8    accredits OHSU's Internal Medicine Residency Program, defines the term "graduate

9    medical education" as meaning "[t]he period of didactic and clinical education in a

10   medical specialty which follows the completion of a recognized undergraduate medical

11   education and which prepares physicians for the independent practice of medicine in that

12   specialty, also referred to as residency education." In turn, the ACGME describes

13   "residency" as "[a] program accredited to provide a structured educational experience

14   designed to conform to the Program Requirements of a particular specialty."

15                                                   10.

16        OHSU maintains residency programs, including an Internal Medicine Residency

17   Program. Residency training is a specialized medical training that follows the trainee's

18   (known as a "resident physician") graduation from medical school and is intended to

19   qualify the resident physician for certification by the applicable specialty medical board.

20   Trainees typically must be licensed physicians. Residency training is often referred to as

21   "graduate medical education" by Defendant OHSU and others. Residency training

22   involves both an employment and an educational relationship between the resident

23   physician and the residency program and its faculty. In general, the resident physician

24   provides valuable medical services to the residency program in exchange for

25   remuneration and educational training as to the knowledge and techniques that are

26   applicable to the medical specialty in which the resident physician seeks certification. The

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 3 of 40

1   training includes, among other things, attending educational lectures, studying medical

2   and scholarly literature, making and attending case presentations, and annual

3   examinations. The residency program prepares a trainee to sit for examination for board

4   certification in the area of medical specialty which is the focus of the program. In this

5   instance, the specialty is internal medicine, which requires three years of credit to be

6   successfully completed.

7

8               **OHSU's History of Discrimination and Retaliation against Plaintiff**

9                                          11.

10      In or about fall and winter of 2015 to 2017, Plaintiff experienced multiple instances

11  of sexual harassment and gender-based discrimination while on a clinical rotation at the

12  OHSU Medical Intensive Care Unit ("MICU").

13                                         12.

14      One instance of sexual harassment occurred in or about October of 2015, during

15  which an OHSU MICU attending physician, Dr. Daniel Hagg, who at the time was an

16  Assistant Professor of Medicine at OHSU, required Plaintiff and another female resident

17  to watch a sexually suggestive video in a dark workroom. On information and belief, said

18  Assistant Professor of Medicine danced in a sexually suggestive manner while grabbing

19  his crotch, and preventing the female residents' exit.

20                                         13.

21      Approximately a year later, in November – December 2016, while again rotating

22  on the OHSU MICU service, Plaintiff experienced multiple instances of gender-based

23  harassment and discrimination by two different OHSU MICU attending physicians, Drs.

24  Matthew Drake and Jeffrey Gold. These instances involved derogatory and demeaning

25  comments and unfounded criticisms stated publicly regarding Plaintiff's patient care

26  work, communication style and interpersonal skills while no similar comments were made

Page 4 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

**Exhibit 2 - Page 4 of 40**

1  in reference to the male junior resident under Plaintiff's supervision. These critical

2  comments and harassing remarks collectively created a hostile educational and work

3  environment for Plaintiff. Of note, no similar comments were made regarding Plaintiff by

4  any other faculty physicians during the same OHSU MICU rotation.

5                                    14.

6         On information and belief, the OHSU MICU service has a history and culture of

7  sexual and gender-based harassment known to Defendants. Numerous female residents

8  and fellows have previously raised concerns about an atmosphere of intimidation towards

9  women in the OHSU MICU. The concerns were significant enough to require OHSU's

10  Affirmative Action and Equal Opportunity ("AAEO") department to mandate sexual

11  harassment training for the entire pulmonary and critical care facility. This information

12  was conveyed to Plaintiff by Dr. Linda Humphrey, OHSU Professor of Medicine and

13  Plaintiff's resident clinic faculty supervisor.

14                                    15.

15        In or about November 2016, during an OHSU MICU rotation, Plaintiff reported

16  the instances of gender-based harassment and that she was experiencing a hostile and

17  abusive working environment to Dr. Humphrey, who then raised the complaint on

18  Plaintiff's behalf with Defendants Desai and Swide and the Director of GME, Sue

19  Simmons.

20                                    16.

21        Defendants refused to investigate Plaintiff's allegations of gender-based

22  harassment. On information and belief, OHSU has a pattern and practice of investigating

23  gender-based harassment/discrimination, sexual harassment/discrimination, and sexual

24  misconduct complaints against serial harassers only.

25                                    17.

26        On information and belief, Defendant OHSU has a pattern and practice of

Page 5 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 5 of 40

1  deliberate indifference toward reports of individual instances of gender-based
2  harassment/discrimination, sexual harassment/discrimination, and sexual misconduct,
3  and a policy of refusing to investigate these reports. On information and belief, Defendant
4  OHSU also has a pattern of practice of deliberate indifference to gender-based
5  harassment/discrimination, sexual harassment/discrimination, and sexual misconduct on
6  its campus by actively suppressing resident, staff, and faculty reports of individual
7  instances of gender-based harassment/discrimination, sexual harassment/discrimination,
8  and sexual misconduct.

9                                    18.

10    In or around March 11, 2019, Defendant OHSU's second-in-command, Dr. Sharon
11  Anderson, OHSU's Dean of the School of Medicine, who is paid over $980,000 per year,
12  has worked for OHSU for nearly 30 years, and oversees nearly 2,500 faculty representing
13  19 clinical departments, seven basic science departments, and multiple research centers,
14  responded to a question in front of surgeons and residents about how to handle a sexual
15  harassment complaint. In a video of OHSU's Surgery Department Grand Rounds , her
16  dismissive statement was that: "Stuff happens all the time … and leaders hear about stuff
17  … and some of it – not necessarily harassment or discrimination but just sort of um uh
18  possibly inappropriate things you hear about … if it's somebody that you know is not a
19  'chronic offender' you can sort of sit down and have a heart-to-heart talk and say, 'cut it
20  out.'" Dr. Anderson's response was later made a part of a federal Title IX and sex
21  discrimination complaint filed against OHSU's leadership team, underscores OHSU's
22  deliberate indifference to sexual misconduct.

23                                    19.

24    Plaintiff's good faith complaint of the sexual harassment and gender
25  discrimination of Defendant OHSU's employees and/or agents was not met with a prompt
26  and equitable resolution. Instead, in retaliation for Plaintiff's complaint, Defendant Desai

Page 6 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 6 of 40

did not allow Plaintiff to appeal the baseless, negative evaluations from two OHSU MICU attending physicians, Drs. Drake and Gold, who were involved in the sexual harassment and gender discrimination of Plaintiff, *infra* ¶ 13. Defendant Desai further retaliated against Dr. Humphrey by writing her up in a disparaging letter to Dr. Anderson, in which she accused Dr. Humphrey of "behavior [that] oversteps the appropriate bounds of a mentor" and taking a "very troublesome approach to a potentially significant issue."

20.

OHSU's Intern/Resident/Fellow Appointment Agreement states, under ¶14: "[s]exual harassment and other types of unlawful discrimination are prohibited by OHSU policies and by state and federal law. OHSU does not tolerate this prohibited behavior. Retaliation of any kind taken against any Resident as a result of that Resident's seeking to have grievances or concerns addressed regarding sexual harassment or other forms of discrimination is prohibited. Residents with concerns about sexual harassment or other forms of discrimination should contact... their Program Director, any academic or administrative official of OHSU, the Affirmative Action & Equal Opportunity Department (AAEO) or the Human Resources Department."

21.

ACGME Institutional Requirement ¶ IV.H.3. states: "Harassment: The Sponsoring Institution must have a policy, not necessarily GME-specific, covering sexual and other forms of harassment, that allows residents/fellows access to processes to raise and resolve complaints in a safe and non-punitive environment consistent with applicable laws and regulations." Furthermore, the ACGME Common Program Requirement ¶ VI.B.6. states: "Programs, in partnership with their Sponsoring Institutions, must provide a professional, equitable, respectful, and civil environment that is free from discrimination, sexual and other forms of harassment, mistreatment, abuse, or coercion of students, residents, faculty, and staff."

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

**Exhibit 2 - Page 7 of 40**

22.

One of the OHSU MICU attending physicians who was involved in gender-based harassment, Dr. Drake, wrote a page of negative comments in Plaintiff's evaluation that – on information and belief – were influenced by gender bias that contradicted Plaintiff's experience during this rotation. Dr. Drake failed to provide Plaintiff notice of substandard performance or any performance feedback until he submitted his negative evaluation after she completed the rotation. Dr. Drake's evaluation was inconsistent with satisfactory evaluations by other OHSU MICU attending physicians from the same rotation

23.

The other OHSU MICU attending physician, Dr. Gold, wrote in his evaluation of Plaintiff a series of negative comments about the quality of Plaintiff's patient care skills that – on information and belief – were influenced by gender bias, that contradicted Plaintiff's experience during this rotation. None of these criticisms were communicated to Plaintiff in advance of the evaluation, and the evaluation was inconsistent with satisfactory evaluations by other OHSU MICU attending faculty during the same rotation.

24.

The OHSU GME Policy on Evaluation of Residents/Fellows (Policy No. GME-11) states that "[f]aculty involved in direct supervision of trainees must provide regular, frequent formative feedback to their learners during each rotation or educational assignment". The policy also requires that "[t]he training program must provide an objective performance evaluation based on the Core Competencies and the specialty-specific Milestones utilizing input from multiple evaluators." The ACGME Common Program Requirement ¶ V.A.1.a). also states: "Faculty members must directly observe, evaluate, and frequently provide feedback on resident performance during each rotation or similar educational assignment."

Page 8 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 8 of 40

25.

In or about November 2016, while on the OHSU MICU service, Plaintiff developed symptoms of severe depression. Around mid-November 2016, Plaintiff shared this fact with Dr. Humphrey. Later in November 2016, Plaintiff also disclosed to Defendant Desai that she was developing symptoms of severe depression. On information and belief, Plaintiff's peer resident, Dr. Zaida Rodriguez also informed Defendant Desai of Plaintiff's symptoms. In or about mid-December 2016, Plaintiff also shared her worsening depression with the GME Director, Ms. Simmons. In response, Ms. Simmons referred Plaintiff to "get help" in OHSU's Resident and Faculty Wellness Program ("Wellness Center").

26.

The Wellness Center is funded 100% by OHSU's GME department. OHSU warrants that its Wellness Program is a national success model and have featured it in national ACGME conferences on physician well-being. The Wellness Center's webpage states it provides free, unlimited, confidential counseling, coaching, and psychiatric services. RePAC records show that the Wellness Center often assists with accommodations of the Program's residents with mental health conditions.

27.

On or about December 29, 2016, Plaintiff began seeing a Wellness Center psychologist, Dr. Sydney Ey. Plaintiff reported "feeling hopeless, upset and in shock and having thoughts it would be easier to be dead." Dr. Ey noted that Plaintiff was "upset and tearful," and that Plaintiff regarded her experience in the Program as "painful and scary" and that she did not know who to trust.

28.

On or about January 3, 2017, Defendant Desai presented Plaintiff's performance summary to the Program's Resident Promotion Advisory Committee ("RePAC"). RePAC

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 9 of 40

1  is separate and distinct from the Program's Clinical Competency Committee ("CCC").

2  The CCC is comprised of core program faculty and performs biannual competency

3  assessments of all internal medicine residents using a standardized process to review each

4  resident's performance by two independent faculty members. RePAC is a committee of

5  different (predominantly non-core) faculty and is tasked exclusively with managing

6  "struggling" residents. In contrast to the CCC's dual performance review process by two

7  independent faculty members, RePAC hears monthly summaries of each resident's

8  progress that are "predigested" and presented by the Program Director and makes

9  recommendations about remediation, promotion, and dismissal. Defendant Desai's

10 presentation of Plaintiff's performance focused disproportionally on the negative

11 evaluations by the two MICU attending physicians (Drs. Gold and Drake, *supra* ¶ 22-23)

12 and disregarded most of the remaining evaluations – the bulk of which were positive –

13 including evaluations from other MICU attendings received during the same rotation.

14 Deferring to Defendant Desai's biased report, RePAC recommended that Plaintiff be

15 placed on formal remediation.

16                                    29.

17        As Program Director, Defendant Desai has the final say as to whether a resident is

18 placed on formal mediation. According to RePAC's policy, formal remediation is

19 reportable to licensing boards or credentialing bodies. RePAC's Chair, Dr. Shona

20 Hunsaker, later reported to OHSU's AAEO investigator that "in her 10 years of

21 involvement with RePAC, possibly five residents had been placed on [formal]

22 remediation". Some RePAC members, including Dr. Linda Lucas, OHSU's Professor of

23 Medicine who served on RePAC for 20 years, raised significant concerns about arbitrary

24 process and bias against Plaintiff: "At the end of my career, I have come to the case at

25 RePAC that I do not feel good about at all, in fact, I feel awful about… I am begging you

26 to please reconsider any alternatives… I feel badly about being on RePAC and letting

Page 10 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 10 of 40

1    [Plaintiff] down. I feel like I have also let down the whole GME process." Defendant

2    Desai dismissed Dr. Lucas's concerns and ignored her impassioned plea.

3                                           30.

4         RePAC's official minutes document that during Committee's meetings the RePAC

5    Chair, Dr. Hunsaker, Defendant Desai, the Associate Program Director Dr. Erin Bonura,

6    and the former Program Director, Dr. Thomas Cooney, among others, expressed negative

7    criticism of aspects of Plaintiff's work as a resident, which cited sociocultural factors.

8    The criticism directly referenced or were attributed to Plaintiff's national origin as an

9    immigrant from Russia, citing Plaintiff's "cultural background". RePAC's official

10   minutes document the Committee members deliberated "whether or not [Plaintiff's] lack

11   of adaptability to different cultural expectations will preclude her from being successfully

12   trained to practice medicine in the [United States]." In their official minutes of another

13   meeting, RePAC also noted that "concerns were raised that [RePAC members] are likely

14   unable to fully appreciate the sociocultural context of [Plaintiff's] behaviors" and that the

15   Committee "noted that [Plaintiff] has failed to engage with multiple attempts to more

16   fully elucidate this."

17                                          31.

18        It is well documented from OHSU's December 2017 Faculty Survey, the Gender

19   and Under-represented Minority ("URM") Comparison Report, that women and

20   minorities at OHSU experience twice or higher rates of harassment and discrimination

21   compared to males and non-minorities. Based on a survey of approximately 2,000 faculty,

22   twice as many female faculty experienced both harassment (17%) and discrimination

23   (19%) compared to male faculty (10% and 9%, respectively). The climate at OHSU is

24   even worse for minorities. Twice as many URM faculty reported experiencing harassment

25   (24%) and three times as many experienced discrimination (33%) compared to non-URM

26   faculty (12% and 12%, respectively). Female and minority faculty were also less likely

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 11 of 40

1   to be in leadership positions, were more likely to leave OHSU, and reported higher stress
2   and burnout levels. The report did not examine whether the rates of harassment and
3   discrimination were higher among faculty who are both female and minorities.

4                                          32.

5       On information and belief, Defendant OHSU and/or its agents falsified the
6   attendance and voting status records of different RePAC members in over half of the
7   RePAC's official minutes which documented RePAC's discussions of Plaintiff's
8   progress. Furthermore, on information and belief, after Plaintiff complained about being
9   discriminated against on the basis of her national origin and after she had requested
10  minutes of RePAC's future meetings, the Committee changed the format of their minutes
11  to no longer include comments regarding Plaintiff's national origin.

12                                         33.

13      On or about January 3, 2017, Defendant Desai placed Plaintiff on formal
14  remediation. Shortly thereafter, Plaintiff took a two-week sick leave due to severe
15  distress, depression, and anxiety caused by Defendant Desai's decision to put her on
16  formal remediation. During that time, Defendant Desai began sending Plaintiff advertised
17  openings at other programs, including second year ("PGY-2") internal medicine resident
18  positions in programs at Rutgers New Jersey Medical School and University of Southern
19  California. This information was not solicited by Plaintiff.

20                                         34.

21      On or about January 17, 2017, Dr. Humphrey – with Plaintiff's permission – called
22  Dr. Ey of the Wellness Center to request a referral for Plaintiff to be formally evaluated
23  for a diagnosis of depression. No referral took place. Instead, Plaintiff was provided an
24  "urgent pager number" and instructed "to continue supportive counseling and coaching."
25  Moreover, Plaintiff sought assistance from Dr. Ey to facilitate accommodations for
26  Plaintiff's upcoming remediation. Neither the promised assistance – nor any follow-up

Page 12 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 12 of 40

1 consultations during Plaintiff's February to April 2017 remediation period – materialized.

2                         35.

3 In or about February 2017, after Plaintiff extinguished her available sick days, she

4 asked the GME Director, Sue Simmons, for administrative leave. Contrary to the OHSU

5 GME Administrative Leave Policy (Policy No. 03-80-005), which provides that the GME

6 department can grant residents a discretionary paid administrative leave if deemed "in the

7 best interest of OHSU or the Trainee," Ms. Simmons falsely advised Plaintiff that this

8 option existed only as a "severance package of paid administrative leave" if Plaintiff was

9 to resign from the Program. After Plaintiff declined the offer, Ms. Simmons informed

10 Plaintiff that her current PGY-2 contract had apparently expired the month before.

11 Plaintiff never received the mandatory notice of contract nonrenewal.

12                         36.

13 In or around February 2017, Plaintiff began the two-month remediation. The

14 remediation plan set forth several requirements with main focus on (1) "timely"

15 completion of charting and (2) conference attendance, both of which had to be fulfilled

16 with "100% compliance." The "timely charting" requirement mandated that all records

17 be completed within highly restrictive time frames which were much more stringent than

18 that of Plaintiff's peers in the Internal Medicine Residency Program. Plaintiff was also

19 required to attend 100% of conferences (whereas the Residency Program's requirement

20 was 60% conference attendance). Unlike all other residents, Plaintiff was assigned to

21 present at conferences only two times during her entire training. Plaintiff was subjected

22 to an irregularly demanding schedule of back-to-back inpatient wards while no other

23 residents had been assigned back-to-back wards during the 2017-2018 year. The

24 remediation plan also involved an inequitable and nontransparent, assessment process

25 whereby the Program Director, Defendant Desai, solicited "verbal evaluations" from

26 Plaintiff's faculty attendings, junior residents, and medical students under the guise of

Page 13 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 13 of 40

1  formative performance feedback; Defendant Desai utilized this "feedback" as
2  "summative assessments." The remediation plan also failed to comply with RePAC's
3  requirements in the following ways: (a) Plaintiff was not assigned a mandatory faculty
4  mentor; (b) the remediation plan was only two months long (three to six months are
5  required), and (c) Plaintiff was not provided performance coaching and her requested
6  accommodations (dictation software and a quiet workspace to dictate charts).

7                                          37.

8      In or around April 2017, RePAC determined that Plaintiff failed remediation. With
9  recommendation from RePAC, Defendant Desai placed Plaintiff on probation. The failure
10  of the remediation plan was determined chiefly based on Plaintiff not meeting the absolute
11  remediation plan requirements, namely the 100% "timely charting" and 100% attendance
12  at conferences. In fact, these requirements were retaliatory and set her up to fail.
13  Additionally, Defendant Desai, and OHSU's agents Hunsaker and Simmons falsely
14  claimed that Plaintiff's requested accommodations for had been implemented, when in
15  actuality, the accommodations were either not implemented or were not made accessible.

16                                          38.

17     In or around April 2017, Plaintiff appealed the Defendant's Desai's probation and
18  remediation decisions through a GME grievance. The GME Director placed Plaintiff on
19  a mandatory leave during the pendency of the grievance process and subsequent appeal
20  to the Provost, which dragged on for four months. At the grievance hearing, several
21  faculty members (including the former Associate Dean of OHSU GME, Dr. Donald
22  Girard; Chief of Portland VA Hospital MICU, Dr. Thomas Prendergast; OHSU Professor
23  of Medicine, Dr. Martha Gerrity; and Dr. Humphrey) testified in support of Plaintiff at
24  the grievance hearing and asserted that Defendants were treating Plaintiff in a retaliatory
25  and discriminatory manner. The GME Grievance Committee suspended the probationary
26  decision. Declining to find the GME Director at fault for accommodation failures, the

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 14 of 40

1  Committee wrote in their report "in light of the unique circumstances of [I.J.] and OHSU's
2  overall desire to help her succeed... the decision to place her on probation should be
3  suspended." However, the Grievance Committee found that the challenge of the
4  remediation decision was time-barred and no longer appealable, so it remained in place.
5  The Committee also recommended that Plaintiff be assigned a different supervising
6  Program Director (other than Defendant Desai).

7                                              39.

8        In or around April 2017, following months of unabated depression and at the
9  insistence from faculty supporters, Plaintiff saw a non-OHSU physician, Dr. Lawrence
10 Schwartz, and was diagnosed depression and an anxiety spectrum condition. Later in
11 April 207 Plaintiff, met with an AAEO staff, Crystal Roberts who determined that
12 Plaintiff's conditions were ADA-qualifying disabilities and that she was entitled to
13 accommodation. On or around the time of this accommodation request, Plaintiff also
14 complained with AAEO regarding having been denied accommodation for her
15 depression, which was known to Defendants Desai and Simmons during the February –
16 April 2017 remediation.

17                                             40.

18       In or about May 2017, Plaintiff obtained a copy of her Wellness Center file and
19 discovered handwritten records of phone calls between Dr. Ey and the GME Director,
20 Sue Simmons. The call records documented disparaging remarks about Plaintiff's
21 personality and character as made by Defendant Desai.

22                                             41.

23       In or about May 2017, Defendant Desai falsely stated in her letter to the GME
24 grievance committee: "depression – at no time has [Plaintiff] stated to us that she has a
25 formal diagnosis of depression and required any accommodation… Thus, this program
26 cannot act on information that is not known."

Page 15 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 15 of 40

42.

One week after Plaintiff won her GME grievance and filed her AAEO complaint, Defendant Desai submitted a report to the American Board of Internal Medicine (ABIM), which is the specialty board that bestows certification to physicians in internal medicine based on performance in residency and a certification exam. Defendant Desai rated Plaintiff's performance during the 2016-2017 academic year as "overall unsatisfactory," which resulted in the denial of 16 months of training credit to Plaintiff. Defendants did not notify Plaintiff of this rating or the denial of these credits and she was unable to timely contest the decision. While Defendant Desai later documented in Plaintiff's Final Evaluation that the unsatisfactory "overall competency" assessment was made by the Program's CCC Committee, Defendant Desai could not provide any records of such decision by the CCC when Plaintiff requested the record in November 2017.

43.

In or around August 2017, Plaintiff returned to training to complete her remediation. While Plaintiff's performance was rated satisfactory, Plaintiff was still subjected to heightened performance standards for charting "timeliness" by Defendant Desai and RePAC as compared with her peers. In the words of Dr. Humphrey: "In my 28 years as faculty in the School of Medicine, I have never seen residents asked to complete notes in these time periods. In addition, I have rarely (if ever) seen residents achieve these note timing expectations. I understand that these may be aspirational goals but do not think more should be asked of [Plaintiff] than has ever been demanded (or requested) of other residents".

44.

In or around August 2017, Plaintiff was assigned to the Associate Program Director, Dr. Erin Bonura to oversee her remediation. Dr. Bonura is an intermediate of Defendant Desai and – on information and belief – is still subject to her direction.

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 16 of 40

1   Beginning August 2017, Dr. Bonura presented monthly summaries of Plaintiff's

2   performance at RePAC meetings. Additionally, Dr. Bonura and the Associate GME

3   Director, Maya Severson, also held monthly meetings with Plaintiff regarding Plaintiff's

4   performance and progress. Plaintiff's faculty supporters, including Dr. Humphrey,

5   requested to attend. However, Dr. Bonura, acting on the behest of Defendant Desai,

6   formally barred Dr. Humphrey and others from attending these meetings.

7                                           45.

8        Throughout the August - December 2017 remediation period, Defendant Desai,

9   and members of RePAC continued to require disparate, heightened performance

10  standards of Plaintiff. Defendants continued to require Plaintiff to complete 100% of

11  charts within untenable timeframes and attend 100% of conferences. Additionally,

12  although the AAEO department formally approved Plaintiff for accommodations, the

13  remediation plan included a new requirement for Plaintiff to "ask for help" with

14  implementation and maintenance of her accommodations.

15                                          46.

16       In or about August 2017, the Internal Medicine Residency Program, GME and

17  AAEO employees, Dr. Bonura, Ms. Severson and Ms. Roberts were generally tasked with

18  effectuating Plaintiff's approved accommodations, but no one was assigned directly

19  responsible for implementation and monitoring of the accommodations. During the

20  August – December 2017 remediation period, there were multiple failures with

21  implementation and maintenance of Plaintiff's accommodations as well as numerous

22  delays in responding to her accommodation requests.

23                                          47.

24       In or about December 2017, RePAC concluded that Plaintiff again did not meet

25  the untenable standards under the same remediation plan requirements, including 100%

26  "timely charting", 100% attendance at conferences. RePAC members also determined

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 17 of 40

1    Plaintiff failed the added requirement of "asking for help" with accommodations, in part

2    due to contacting the "wrong IT personnel" to resolve failure of dictation software on a

3    holiday weekend while on the VA Hospital ward rotation. Ms. Severson and Ms. Roberts

4    attended RePAC's meeting and "assured committee that AAEO and GME have provided

5    all reasonable accommodations." RePAC voted to extend Plaintiff's remediation by two

6    additional months, which also resulted in her not being promoted into the PGY-3

7    residency year.

8                                      48.

9         As a result, Plaintiff filed a second GME grievance in or around January 2018. On

10   the day after Plaintiff filed her grievance, Defendant OHSU's agents, Dr. Bonura and Ms.

11   Severson, sent Plaintiff a copy of the GME grievance policy, which contained significant

12   changes to the policy. This new policy was substantially more restrictive than the prior

13   policy in that it excluded discrimination complaints from its purview, did not allow

14   witnesses at hearings, made hearings essentially closed-door, and limited the grounds for

15   subsequent appeals to procedural and policy violation issues only. On information and

16   belief, this new policy was not enacted in due course. Defendant Swide placed Plaintiff

17   on another mandatory leave during the pendency of the second grievance process.

18                                     49.

19        In or around February 2018, the GME Grievance Committee acknowledged that

20   Plaintiff was held to inequitable performance standards and recommended that they be

21   reviewed by the Program.

22                                     50.

23        As a result of Defendants' continued discriminatory and retaliatory conduct, in

24   March 2018 Plaintiff began experiencing further exacerbation of her depression

25   prompting her physician, Dr. Schwartz, to request in writing that Defendants put Plaintiff

26   on temporary light duty schedule due to these symptoms.

Page 18 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com
Exhibit 2 - Page 18 of 40

51.

Defendant Desai, RePAC, and/or their agents took no meaningful remedial measures in response to the GME Grievance Committee's acknowledgement and recommendations, but instead continued Plaintiff's remediation and further subjected Plaintiff to heightened performance standards and a disproportionately demanding schedule, in disregard of Plaintiff's physician's request for light duty. Instead, Defendant Desai and RePAC again assigned Plaintiff back-to-back ward rotations, this time with the addition of overnight and 24-hour long shifts as a part of her March – May 2018 remediation.

52.

Plaintiff received positive evaluations from faculty attendings during her first ward rotation in March 2018. However, during the last seven days of Plaintiff's second ward rotation in or around April 2018, Plaintiff unexpectedly received negative evaluations from two ward faculty attendings, both of whom had minimal interactions with Plaintiff. OHSU Assistant Professor of Medicine, Dr. David Harmon, worked with Plaintiff for only four days and OHSU Professor of Medicine, Dr. Rebecca Harrison, worked with Plaintiff for only three days.

53.

On or about May 3, 2018, Plaintiff complained to Defendant OHSU's Human Resources Department about being bullied and harassed by Dr. Harmon after Plaintiff's 24 hour "resident solo" shift. On or about May 9, 2018, Dr. Harmon gave Plaintiff a negative performance evaluation. The negative evaluation came two days after the Human Resources Department informed him of Plaintiff's complaint. Notably, Dr. Harmon's evaluation was dramatically different from the excellent evaluation he provided Plaintiff during the same rotation just five months prior.

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 19 of 40

54.

The second evaluation by Dr. Harrison rated Plaintiff's performance as "somewhat behind." In a follow-up feedback meeting, Dr. Harrison told Plaintiff that she assessed her at the level of a PGY-3 resident, mistakenly believing Plaintiff was two months away from graduation. After Plaintiff informed Dr. Harrison that she was still a PGY-2 resident, Dr. Harrison promised to correct the evaluation. No correction was made. Two months later, Defendant Desai and RePAC used the negative evaluations by Drs. Harmon and Harrison to support Plaintiff's termination.

55.

On or around June 2018, Plaintiff filed a third GME grievance to address her continued disparate treatment, retaliation, and harassment. On or about June 15, 2018, Plaintiff met with Dr. Anderson, shared with her the escalating retaliation and hostility she was facing from the Residency Program and asked Dr. Anderson to conduct an independent review of the Program's handling of Plaintiff. Dr. Anderson denied the request stating that her conducting such an investigation of the Internal Medicine Residency Program would present a "conflict of interest."

56.

Three weeks later, on June 25, 2018, and while this grievance was still pending, Defendant Desai, with recommendation from RePAC, proposed Plaintiff for termination from the residency program. This decision was based on assessments that were conducted without accommodations and in part solicited from evaluators who themselves were not experienced in assessment of internal medicine residents, such as medical students. Plaintiff's termination was then later approved by Dr. Anderson and Defendant OHSU's CEO, Dr. John Hunter.

57.

On September 6, 2018, Plaintiff filed suit against Defendants in Multnomah

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 20 of 40

1   County Circuit Court, alleging disability discrimination and retaliation; retaliation for

2   EEOC filing; national origin discrimination and retaliation; public whistleblowing; and

3   sex discrimination and retaliation.

4                                          58.

5        On October 31, 2018, the parties engaged in mediation, which resulted in a

6   settlement agreement. As part of the consideration to Plaintiff in exchange for her

7   agreement to a release of all claims and covenant not to sue, Defendants were obligated

8   to perform certain duties as more fully described herein.

9                                          59.

10       The settlement agreement, within the paragraph titled "References and Licenses

11  Inquiries," required Plaintiff to direct any prospective employer or residency program to

12  the Program Director of the Internal Medicine Residency Program "for any employment

13  verification or summative competency-based performance evaluation." At all relevant

14  times, Defendant Desai – an adverse party to Plaintiff's 2018 lawsuit – held this position

15  to which Plaintiff was to direct all such-related inquiries.

16                                         60.

17       In response to any prospective employer or program inquiries, Defendants agreed

18  to an affirmative duty to provide the following limited universe of information to the

19  prospective employer/program (a) a letter of reference in the form of an attached Exhibit

20  A to the settlement agreement, which includes the signature block of Defendant Dr. Desai;

21  (b) Plaintiff's last held position and dates of employment; (c) Plaintiff's Clinical

22  Competence Trainee Evaluations reported to the American Board of Internal Medicine

23  (ABIM); (d) a list of Plaintiff's completed clinical rotations; and (e) no other information.

24                                         61.

25       For any credentialing or licensing inquiries or verifications, Defendants agreed to

26  an affirmative duty to provide the following: (a) the contents contained in an Exhibit B to

Page 21 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-6825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 21 of 40

1    the settlement agreement; (b) Plaintiff's last held position and dates of employment, (c)

2    Plaintiff's Clinical Competence Trainee Evaluations reported to the ABIM, and (d) no

3    other information.

4                                    62.

5         Under the settlement agreement, all parties agreed to not disparage any other party

6    to the settlement agreement in the future regarding activities or employment and/or

7    relationship prior to the effective date of the agreement, in a manner that would "likely

8    cause material damage or harm to the business interest or professional reputation" of the

9    other party.

10

11    **Defendants' Continued Discrimination and Retaliation against Plaintiff by
      means of Material Breach of the Settlement Agreement**

12                                   63.

13    Defendants breached these promises in several material respects.

14                                   64.

15        Defendant Desai has commented, to those who she believed to be prospective

16    employers of Plaintiff, that there existed an agreement and conveyed disparaging opinions

17    regarding Plaintiff to said prospective employers as well.

18                                   65.

19        For example, on or about March 15, 2019, in the context of what information

20    Defendant Desai could provide about Plaintiff, defendant Desai informed a reference

21    checker at Allison & Taylor via voicemail and again on a phone call on or about March

22    19, 2019, that there was an agreement in place between Plaintiff and OHSU. On

23    information and belief, Defendant Desai has provided similar statements to others who

24    have attempted to verify and obtain a reference concerning Plaintiff's employment at

25    OHSU.

26

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

**Exhibit 2 - Page 22 of 40**

66.

The gratuitous disclosure of such an agreement has the practical effect of alerting prospective employers that any positive information provided was forced upon Defendant Desai to resolve a dispute and should be discounted. And regardless of whether a prospective employer discounts any positive comments provided by Defendant Desai, the mere suggestion that the employment relationship needed to be resolved via a settlement agreement is a red flag for employers who fear they may be embroiled in a similar dispute if they hire Plaintiff. This, in turn, significantly reduces the likelihood of Plaintiff being hired.

67.

Despite Defendants' promise to limit the information it provides to prospective employers of Plaintiff as noted above, Defendants have provided to prospective employers a "Final Evaluation" of Plaintiff that was not on the exclusive list of documents to be provided. OHSU did not provide this "Final Evaluation" to Plaintiff until on or about January 9, 2019 -- 10 weeks after the settlement agreement was signed.

68.

The "Final Evaluation" was imbalanced and unfair contrary to prevailing standards in graduate medical education in that it was gratuitously negative and excluded any of the undisputedly positive aspects of Plaintiff's performance, bestowing the incorrect impression that Plaintiff was a uniformly underperforming resident. This significantly reduces the likelihood of Plaintiff being hired.

69.

The contemporary ACGME Internal Medicine Program Requirements governing Defendant OHSU's residency program and its director stated that such a summative evaluation must "document the resident's performance during **the final period of education**." ACGME Internal Medicine Program Requirements ¶ V.A.3.b).(2) (2017)

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

**Exhibit 2 - Page 23 of 40**

1   (*emphasis added*). Prevailing standards in graduate medical education make it clear that

2   such an evaluation is intended to speak only to the "current performance" (i.e., "the

3   resident's abilities at the time" the evaluation is drafted), rather than a full history.

4   Nonetheless, Defendants' "Final Evaluation" of Plaintiff gratuitously recited the history

5   of prior decisions to deny her credit and extend her training.

6                                   70.

7        Defendants compounded this harm to Plaintiff's professional reputation and

8   employment prospects by omitting any of the myriad pieces of undisputed positive

9   information about Plaintiff's performance at OHSU.

10                                  71.

11       The contemporary ACGME Internal Medicine Program Requirements governing

12  OHSU's residency program and its director stated that "[residency p]rograms must

13  provide a professional, respectful, and civil environment that is free from mistreatment,

14  abuse, or coercion of students, residents, faculty, and staff. . . ." *Id.* ¶ VI.B.6. The

15  contemporaneous ACGME Program Director Guide to the Common Program

16  Requirements also notes that evaluations like the "Final Evaluation" should be done in a

17  manner that is "fair." Defendants fell far short of these requirements in their treatment of

18  plaintiff subsequent to the settlement agreement.

19                                  72.

20       Notwithstanding the above, Defendants excluded all positive information from the

21  "Final Evaluation." There was a plethora of such information that could and should have

22  been included. For example:

23  a)  The "formative" evaluations of Plaintiff (done for each rotation in a particular

24       hospital or clinic service) for the "final period" of her training (i.e., July 1, 2017 to

25       June 30, 2018) are overwhelmingly positive; out of 25 evaluations, 22 rated her

26       "right on track" overall, and two rated her "somewhat behind."

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

**Exhibit 2 - Page 24 of 40**

b) The mid-year Milestones Summary for the 2017-18 academic year concluded that plaintiff was satisfactory in five of the six core competencies, with only one competency area marked as "conditional on improvement."

c) Many of the "formative" evaluations assign a Milestone rating that is synonymous with readiness to practice independently (Level 4, the target for graduation) or better (Levels 4.5 and 5, aspirational/faculty-level of competence).

d) Even the June 25, 2018 RePAC recommendation for dismissing Plaintiff acknowledged that plaintiff's "evaluations support that she is performing at or above the expected competency level in some circumstances . . . "

73.

Further, in her communications with prospective residency programs, Defendant Desai disparaged Plaintiff in a manner that resulted in harm to Plaintiff's professional reputation, in violation of the settlement agreement.

74.

Under the settlement agreement, Defendant Desai agreed to an affirmative duty to forward to Plaintiff any advertised opening for post-graduate year three (PGY-3) resident positions that she receives via the Association of Program Directors for Internal Medicine (APDIM) email listserv.

75.

After three months of the settlement agreement being in operation, Defendants deliberately withheld notices of residency position openings. These notices are not posted publicly, and Plaintiff otherwise had no access to the APDIM email listserv to which the notices are posted.

76.

On information and belief, notices of advertised residency position openings were posted to the APDIM listserv during the period of which Defendants were required under

Page 25 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 25 of 40

1   the settlement agreement to forward to Plaintiff.

2                                   77.

3        The settlement agreement between the parties also required OHSU to pay for the

4   mediator's services.

5                                   78.

6        Defendants, through OHSU's in-house counsel Emily Shults, refused to pay for

7   the mediator's services, as required by the settlement agreement.

8                                   79.

9        On January 3, 2019, six past and present OHSU faculty members, clinical

10  directors, and educational program directors authored a strong letter of recommendation

11  of Plaintiff for prospective residency programs, citing that her clinical performance was

12  "on par with or above that of her peers in . . . core competencies. . ." The authors then

13  praised Plaintiff's clinical and academic performance as fully competent and

14  acknowledged Plaintiff's strong work ethic and passion for providing excellent care.

15                                  80.

16  On January 10, 2019, two of the authors of the January 3, 2019 letter of

17  recommendation wrote a confidential companion letter for prospective residency

18  programs to "provide some contextual background to accompany [the] shared

19  endorsement of [Plaintiff.]" The authors reiterated their opinion of Plaintiff's competent

20  clinical and academic performance. In addition to these accolades, the authors openly

21  opined that Plaintiff's performance issues concerning efficiency in charting were the

22  cause of close monitoring and heightened standards to which Plaintiff was expected to

23  perform, and that these standards are significantly higher than that of her peers. The

24  authors further opined that Plaintiff did not receive adequate mentoring or resources to

25  address her alleged performance issues, but instead Defendants set higher workload

26  demands and intensified performance requirements than that of her peers, which caused

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 26 of 40

1    psychological harm to Plaintiff. The authors asserted that Plaintiff is seeking a program

2    where she would be treated fairly and with respect, as she was – in their experience as

3    program directors and experts on equity and physician wellness – not treated with the

4    collegiality and support expected from OHSU.

5                                       81.

6        Many additional individual letters of recommendation authored by OHSU and

7    Veterans Administration program directors, faculty members, and clinicians, similarly

8    praised Plaintiff's competence, good performance, hard work ethic, and positive rapport

9    with colleagues. The only deficiency in Plaintiff's performance identified by any of these

10   authors was focused on Plaintiff's level of efficiency in charting in a high-patient volume

11   setting. Otherwise, they said 95% of Plaintiff's evaluations were "strong to excellent."

12                                      82.

13       Despite the multitude of glowing letters of recommendation for Plaintiff directed

14   to prospective residency programs, all of Plaintiff's applications to these residency

15   programs have been rejected. To date, Plaintiff has applied to at least 20 internal medicine

16   residency programs, including programs for PGY-2 positions and residency positions in

17   the United States Army and United States Navy.

18                                      83.

19       On information and belief, at least two past and present OHSU faculty members

20   have received letters from Defendants and/or their agents, complaining that they were

21   disparaging Defendants Desai and OHSU, and to cease and desist in their characterization

22   of Plaintiff's negative treatment by Defendants, as currently worded in Plaintiff's faculty

23   supporters' letters of recommendation.

24                                      84.

25       A signed letter of reference from an applicant's most recent Residency Program

26   Director is a necessary, if not explicitly required, component of a residency transfer

Page 27 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 27 of 40

1  application. As OHSU's Internal Medicine Program Director, Defendant Desai therefore

2  had an inordinate amount of power over Plaintiff's medical career. In contrast, despite

3  being found by OHSU to have sexually assaulted several women, Defendant OHSU

4  assisted Dr. Jason Campbell, a.k.a. the TikTok Doc, in successfully securing a residency

5  transfer to another medical school. Moreover, OHSU promoted Dr. Campbell to PGY-3,

6  even though he had been put out on administrative leave from April to November of 2020.

7                                        85.

8        Defendants have refused, and continue to refuse, to provide prospective residency

9  programs with a signed letter of reference, which they agreed to do under the terms of the

10  settlement agreement. Defendants OHSU and Desai's continuous refusal to provide this

11  necessary and agreed-upon document constitutes a continual and compounding harm

12  suffered by Plaintiff as she continues to apply to prospective residency programs when

13  she is made aware of suitable positions. Further, the contents of this signed letter are set

14  out in the settlement agreement, accompanied by a signature block for Defendant Dr.

15  Desai. The provision by Defendant Desai of a document containing her signature block

16  *without an authenticating signature* constitutes a material departure from the spirit and

17  intent of the settlement agreement.

18                                        86.

19        On information and belief, Defendants knew of the vital importance of a signed

20  letter of recommendation by the Residency Program Director for Plaintiff's successful

21  transfer into another internal medicine residency program.

22                                        87.

23        Notably, Defendants readily supplied potential employers this same document –

24  signed by Defendant Desai as Residency Program Director – to non-physician positions

25  only, but to date has refused to do so for Residency positions. This fact underscores:

26        a)  Defendants' ability to perform their duties under the settlement agreement;

Page 28 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Caluble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25ᵗʰ Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

**Exhibit 2 - Page 28 of 40**

1    b) Defendants' preconceived intention to refuse to honor the terms of the settlement
2       agreement, prior to its execution; and
3    c) Defendants' purposeful and sustained efforts to ruin Plaintiff's career as a
4       practicing physician.

5                                          88.

6        Under the settlement agreement, no other information is to be contained in the
7    letter of reference itself. In material breach of the agreement, Dr. Desai included negative
8    feedback and criticism of Plaintiff which was not disclosed to Plaintiff at the time of her
9    entering into the agreement.

10                                         89.

11       In an effort to understand her rights and the information Defendants maintained
12   about her – and whether defendants were in fact honoring the settlement agreement –
13   Plaintiff asked Defendant OHSU and/or its agents for access to her residency training file.
14   Defendants denied Plaintiff's request on the spurious notion that it was shielded from
15   disclosure by an unspecified peer review privilege. ACGME guidance simultaneously
16   holds that residency program clinical competency committees are to be transparent with
17   residents regarding the judgments made about them (go so far as to say the committee's
18   minutes can be shared with residents) and that the product of clinical competency
19   committee work is generally not peer review material. Further, a federal court in Oregon
20   has ruled that an exception to the Oregon peer review statute (ORS 41.675) permits
21   practitioners who are contesting the denial, restriction, or termination of participation in
22   a health care group (like Plaintiff was). *See Roberts v. Legacy Meridian Park Hosp., Inc.,*
23   299 F.R.D. 669, 672-75 (D. Or. 2014). Thus, Defendant OHSU and/or its agents
24   disingenuously blocked Plaintiff from reviewing her file and, likely, precluded Plaintiff
25   from mitigating further harm to her career in light of the missing, incomplete, or
26   inaccurate information she would have then had the opportunity to contest.

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

**Exhibit 2 - Page 29 of 40**

90.

The foregoing factual allegations collectively constitute a lengthy campaign in which Defendants and/or their agents – acting on their animus against Plaintiff's national origin status as a Russian immigrant and in retaliation to her good faith reports of sexual harassment and gender-based discrimination – sought to irreparably damage Plaintiff's pursuit of a career as a board-certified practicing physician.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

### (All Defendants)

91.

Plaintiff realleges and incorporates the above factual allegations contained within paragraphs 1-90 as set forth herein.

92.

The parties entered into a settlement agreement on or about October 31, 2018. The agreement contained legal obligations for both Plaintiff and Defendants.

93.

Plaintiff has fully performed her obligations under the settlement agreement.

94.

Defendants have breached the settlement agreement in the following particulars:

a) By commenting on the existence of the agreement with other prospective employers and residency programs.

b) By failing to provide information regarding openings for residency programs to which Plaintiff was eligible to apply.

c) By communicating gratuitously negative, false, and disparaging information to prospective employers and residency programs, thereby preventing

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 30 of 40

1      Plaintiff from acquiring a reasonably appropriate position at a different
2      graduate medical education program.
3      d) By failing to provide a signed reference letter from Defendant Desai in the
4         form required in the settlement agreement to prospective residency
5         programs.
6      e) By disparaging Plaintiff in a manner that resulted in harm to Plaintiff's
7         professional reputation.
8      f) By refusing to pay for the mediator's services.
9                                      95.
10     As a reasonably foreseeable consequence of Defendants', and each of their conduct,
11     Plaintiff suffered damages to her future career in the sum of 15,000,000.00 dollars.
12
13            **SECOND CLAIM FOR RELIEF – National Origin Discrimination**
14            **Deprivation of Civil Rights – 14th Amendment – 42 U.S.C. § 1983**
15                              **(All Defendants)**
16                                     96.
17     Plaintiff realleges and incorporates the above as set forth in full paragraphs 1-95,
18     above.
19                                     97.
20     Defendant OHSU is a public entity, a medical education provider, and an employer.
21                                     98.
22     Defendants' actions, under the color of state law, deprived Plaintiff of her right to
23     be free from discrimination on the basis of national origin under the Fourteenth
24     Amendment of the United States Constitution.
25                                     99.
26     The deprivation of the constitutional right set forth above was caused by Defendants

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

**Exhibit 2 - Page 31 of 40**

1    and/or their agents in one or more of the following ways:

2      a)  By citing and relying upon negative references to and innuendo of plaintiff's
3          cultural background, cultural expectations, and national origin of Russian
4          immigrant, when making substantive decisions regarding the continuation of
5          her employment with OHSU graduate medical education.

6      b)  By citing and relying upon negative references to and innuendo of plaintiff's
7          cultural background, cultural expectations, and national origin of Russian
8          immigrant, in several statements which were used to evaluate whether
9          plaintiff was able to continue to progress through defendants' residency
10         program.

11     c)  By Defendants' use of plaintiff's national origin of Russian immigrant as
12         impetus to purposefully, materially, and continually breach the settlement
13         agreement between plaintiff and defendants, as more fully described in
14         paragraphs 91 through 95.

15     d)  By individual Defendants' failure to take corrective action upon learning of
16         violations of Plaintiff's 14th Amendment right to be free from discrimination
17         on the basis of national origin.

18     e)  By individual Defendants' failure to intervene to stop known violations of
19         Plaintiff's 14th Amendment right to be free from discrimination on the basis
20         of national origin.

21     f)  By individual Defendants' deliberate indifference to the known violations of
22         Plaintiff's 14th Amendment right to be free from discrimination on the basis
23         of national origin.

24                                        100.

25         As a reasonably foreseeable consequence of defendants', and each of their

26    agents', conduct, Plaintiff suffered:

Page 32 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 32 of 40

1      a)  Economic Damages due to the impacts of Defendant's action on her
2         future career, in the sum of $15,000,000.00
3      b)  Severe emotional distress, severe psychological distress, humiliation,
4         frustration, and a diminution of her quality of life, to her noneconomic
5         damage to be determined fair by the trier of fact, not to exceed
6         $5,000,000.00.

7                  101.

8      Plaintiff is entitled to recover her necessary and reasonable attorney fees and costs
9  incurred in the prosecution of this action.

10

11        **THIRD CLAIM FOR RELIEF – Sex Discrimination**
12      **Deprivation of Civil Rights – 14th Amendment – 42 U.S.C. § 1983**
13               **(All Defendants)**

14                  102.

15      Plaintiff realleges and incorporates as set forth in full paragraphs 1-101, above.

16                  103.

17      Defendant OHSU is a public entity, a medical education provider, and an employer.

18                  104.

19      Defendants' actions, under the color of state law, deprived Plaintiff of her right to
20  be free from discrimination on the basis of sex under the Fourteenth Amendment of the
21  United States Constitution.

22                  105.

23      The deprivation of the constitutional right set forth above was caused by Defendants
24  and/or their agents in one or more of the following ways:
25  (a) By placing Plaintiff into Defendants' remediation program in retaliation to her
26      report of sexual harassment and gender-based discrimination.

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

**Exhibit 2 - Page 33 of 40**

1    (b) By refusing to accommodate Plaintiff's diagnosed disabilities in retaliation to her

2        report of sexual harassment and gender-based discrimination.

3    (c) By Defendants' purposeful, material, and continual breach the settlement agreement

4        between Plaintiff and Defendants, as more fully described in paragraphs 91 through

5        95, in retaliation for Plaintiff's report of sexual harassment and gender-based

6        discrimination.

7    (d) By individual Defendants' failure to take corrective action upon learning of

8        violations of Plaintiff's 14th Amendment right to be free from discrimination on the

9        basis of sex.

10   (e) By individual Defendants' failure to intervene to stop known violations of Plaintiff's

11       14th Amendment right to be free from discrimination on the basis of sex.

12   (f) By individual Defendants' deliberate indifference to known violations of Plaintiff's

13       14th Amendment right to be free from discrimination on the basis of sex.

14                                          106.

15       Plaintiff realleges her damages as set forth in paragraph 100 above.

16                                          107.

17       Plaintiff is entitled to recover her necessary and reasonable attorney fees and costs

18   incurred in the prosecution of this action.

19

20            **FOURTH CLAIM FOR RELIEF – Equal Protection**

21       **Deprivation of Civil Rights – 14th Amendment – 42 U.S.C. § 1983**

22                          **(All Defendants)**

23                                          108.

24       Plaintiff realleges and incorporates as set forth in full paragraphs 1-107, above.

25                                          109.

26       Defendant OHSU is a public entity, a medical education provider and employer.

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

**Exhibit 2 - Page 34 of 40**

110.

Defendants' actions, under the color of state law, deprived Plaintiff of her right to equal protection of the law under the Fourteenth Amendment of the United States Constitution.

111.

The deprivation of the constitutional rights set forth above was caused by Defendants and were disparate in relation to her peers within the program.

112.

Plaintiff realleges her damages as set forth in paragraph 100.

113.

Plaintiff is entitled to recover her necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

## FIFTH CLAIM FOR RELIEF

### Conspiracy to Deprive Civil Rights – 42 U.S.C. § 1985

### (All Defendants)

114.

Plaintiff realleges and incorporates as set forth in full paragraphs 1-113, above.

115.

Two or more Defendants or agents of Defendants engaged together, in the furtherance of a plan to deprive Plaintiff of her residency position in the OHSU Internal Medicine residency program due to both her national origin, which Defendants have characterized as "cultural factors," and due to Plaintiff's filing of grievances due to sexual harassment and gender-based discrimination. These acts by Defendants, or Defendants' agents, were not a single act but a series of acts committed by multiple entities. This coordinated action of Defendants or Defendants express, or implied agents did cause an

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 35 of 40

1  injury to Plaintiffs rights.

2                                          116.

3      Plaintiff realleges her damages as set forth in paragraph 100.

4

5                                          117.

6      Plaintiff is entitled to recover her necessary and reasonable attorney fees and costs

7  incurred in the prosecution of this action.

8

9                        **SIXTH CLAIM FOR RELIEF - Title IX**

10              **Sex Discrimination in Education – 20 U.S.C. § 1681 et seq.**

11                                  **(All Defendants)**

12                                         118.

13     Plaintiff realleges and incorporates by reference the above paragraphs 1-117

14  above.

15                                         119.

16      Plaintiff is a "person" as described in 20 U.S.C. § 1681(a) and was subjected to

17  discrimination by Defendants.

18                                         120.

19     Defendant OHSU, as a public institution of vocational, professional, or higher

20  education, is a "educational institution" as defined by 20 U.S.C. § 1681(c); OHSU

21  operates the OHSU Internal Medicine residency program and the broader graduate

22  medical education program, either or both of which is a "program" defined by 20 U.S.C.

23  § 1687.

24                                         121.

25      OHSU is a federal funding recipient, including the funds for direct and indirect

26  graduate medical education that the Centers for Medicare & Medicaid Services provides

Page 36 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

**Exhibit 2 - Page 36 of 40**

1   to residency programs to underwrite a portion of the training of medical residents and

2   associated operations.

3                                             122.

4         On information and belief, Defendants do not:

5              a)   Breach contracts with male physicians/residents who enter into

6                   settlement agreements with them,

7              b)   Sexually harass male physicians/residents,

8              c)   Sexually discriminate against male physicians/residents,

9              d)   Defame male physicians/residents,

10             e)   Retaliate against male physicians/residents for opposing unlawful

11                  discrimination, or

12             f)   Deny accommodations requested by male physicians/residents.

13                                            123.

14         Such acts were deliberately indifferent to Plaintiff's right to access educational

15   opportunities at OHSU. Defendant Desai, as Program Director, had knowledge of the

16   harassment and disparate treatment, is an official of OHSU with the authority to take

17   corrective action, failed to do so, and did so with deliberate indifference.  Defendant

18   Swide, Associate Dean for Graduate Medical Education at OHSU and the Designated

19   Institutional Official charged with ensuring compliance with ACGME requirements, on

20   information and belief had knowledge of the harassment and disparate treatment of

21   Plaintiff, is an official of OHSU with the authority to take corrective action, failed to do

22   so, and did so with deliberate indifference. Defendants further retaliated against Plaintiff

23   for opposing unlawful discrimination, a protected activity, by, among other things,

24   subjecting Plaintiff to retributive performance evaluations and credit determinations,

25   imposing unwarranted remediation actions and additional tasks or obligations, imposing

26   unwarranted extensions of Plaintiff's training, denying accommodations, taking action to

Page 37 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 37 of 40

1  terminate Plaintiff, and knowingly and materially breaching a settlement agreement with

2  Plaintiff, as noted herein.

3                                    124.

4        Plaintiff realleges her damages as set forth in paragraph 100.

5                                    125.

6         Plaintiff is entitled to recover her necessary and reasonable attorney fees and costs

7  incurred in the prosecution of this action.

8  //

9  //

10  //

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 38 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 38 of 40

1    WHEREFORE, PLAINTIFF PRAYS FOR RELIEF AGAINST DEFENDANTS:

2    1. Compensatory damages, including damages for lost wages, lost job opportunities

3    and the wages which would have resulted therefrom, mental anguish and distress,

4    pain and suffering in the amount of $ 15,000,000.00

5    2. Non-economic damages in the amount of $5,000,000.00

6    3. Pre-judgment interest;

7    4. Costs and disbursements herein; and

8    5. Finding that the Defendants engaged in unlawful discrimination against Plaintiff in

9    violation of 20 U.S.C. § 1681, 42 U.S.C. § 1983, and/or the Fourteenth Amendment

10    of the U.S. Constitution;

11    6. Declaring unlawful and unconstitutional the acts, policies, and practices of

12    Defendants;

13    7. Awarding equitable relief against Defendants which may be appropriate to restrain

14    these violations and require Defendants to take such affirmative action as is

15    necessary to ensure that the effects of the unconstitutional and unlawful acts,

16    policies, or practices do not continue;

17    8. Granting Plaintiff injunctive relief that bars Defendants from their continued

18    attempts to suppress the support of past or present staff, clinical colleagues, or

19    faculty members of Defendant OHSU or the Veterans Administration medical

20    clinic, and from attempting to prevent Plaintiff from serving as a clinical physician.

21    9. A judgment in favor of Plaintiff and against Defendants for the costs of litigation

22    and for attorneys' fees pursuant to 42 U.S.C. § 1988, and any other bases upon

23    which such relief may be granted as may be appropriate; and

24    10. Such other relief the Court finds appropriate.

25    //

26    //

Page 39 – COMPLAINT
Claim Not Subject to Mandatory Arbitration

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

Exhibit 2 - Page 39 of 40

1    WHEREFORE, PLAINTIFF PRAYS IN THE ALTERNATIVE FOR:

2    1. **Specific performance**: Plaintiff demands that Defendants perform the spirit of the

3    intent of the settlement agreement between the parties by facilitating the acts

4    necessary to enable Plaintiff to be placed in an internal medicine graduate medical

5    education program (residency) at the same or similar resident experience level as

6    experienced by Plaintiff at Defendant's graduate medical education program in

7    internal medicine.

8    2. **Equitable Compensation:** To the extent that Defendants are unable to perform

9    their duties on the settlement agreement, Plaintiff demands equitable compensation

10   to compensate for the breaching party's failure to perform the contract completely,

11   in an amount that would compensate Plaintiff for the difference between complete

12   performance and partial performance.

13

14   DATED: July 10, 2021.

15

16   CAUBLE, SELVIG & WHITTINGTON, LLP

17   _____/s/ Christopher L. Cauble_____
     Christopher L. Cauble, OSB No. 962374

18

19   _____/s/ Kellie A. Furr_____
     Kellie A. Furr, OSB No. 123197

20

21   _____/s/ Travis A. Merritt_____
     Travis A. Merritt, OSB No. 195857

22

23   SORDYL LAW, LLC

24   _____/s/ Kimberly A. Sordyl_____
     Kimberly A. Sordyl, OSB No. 031610

25   Of Attorneys for Plaintiff

26

Cauble, Selvig & Whittington, LLP - Attorneys At Law
1205 Northwest 25th Avenue
Portland, OR 97210
541-476-8825 Fax 541-471-1704
ccauble@thecaublefirm.com

**Exhibit 2 - Page 40 of 40**